## KANOTEX REFINING CO. v. BONIFIELD.

No. 9322—Opinion Filed July 15, 1919.

Rehearing Denied Oct. 7, 1919.

(183 Pac. 971.)

1. **Master and Servant—Action for Injuries from Negligence of Fellow Servant—Necessary Allegations of Petition.**

In an action by a servant against his master for injuries caused by the negligence of a fellow servant, the petition must aver that the fellow servant was incompetent for or unskilled in the work in which he was engaged, and that the master negligently employed or retained him with knowledge, actual or constructive, of his incompetency or unskillfulness, that the plaintiff was ignorant thereof, and that the injury was caused by the negligence of said servant.

2. **Same—Burden of Proof.**

In an action by a servant against his master for injuries received by the negligence of a fellow servant, the burden is on plaintiff to prove that the fellow servant was incompetent or unfit to perform the work in which he was engaged, and that the master was negligent in employing him or retaining him after discovering his incompetency or unfitness, and that the injury complained of was the result of or caused by such incompetency or unfitness.

3. **Same — Care of Master in Selection of Fellow Servants.**

The law imposes upon a master the duty to exercise reasonable care, such care only as men of reasonable and ordinary prudence exercise, in the selection and retention of servants, and when he has discharged this duty, he cannot be held responsible for injuries resulting from the negligence of the servants so selected, in an action by a servant against him for injuries resulting from the negligence of a fellow servant.

4. **Appeal and Error—Review—Verdict—Insufficiency of Evidence.**

It is the established rule in this state that, where there is any evidence that reasonably tends to support the verdict, it will not be disturbed on appeal; but, where there is an entire failure of any evidence to support the verdict, the verdict and judgment will be set aside.

(Syllabus by Davis, C )

Error from District Court, Woodward County; J. C. Robberts, Judge.

Action by S. Bonifield against the Kanotex Refining Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions.

H. H. Montgomery and D. P. Marum, for plaintiff in error.

Swindall & Wybrant, for defendant in error.

Opinion by DAVIS, C. On the 24th day of June, 1915, defendant in error, hereinafter referred to as plaintiff, commenced this action against plaintiff in error, hereinafter referred to as defendant, to recover the sum of $2,800 as damages alleged to have been suffered by plaintiff while engaged as an employe of defendant.

Defendant is a corporation organized under the laws of Kansas, and as such corporation was engaged in doing business in this state on the date that the injuries complained of were received by plaintiff. On the 28th day of June, 1913, defendant had an oil tank located at Laverne, Okla., on a flat car. The oil tank was about 16 feet long and 8 feet in diameter. Walter Derby and W. O. Freese, who resided at Woodward, Okla., the same town in which plaintiff resided at that time, were going from Woodward to Laverne for the purpose of unloading the oil tank in question. On or about the 25th day of June, 1913, Mr. Freese went to the home of plaintiff to borrow a block and tackle from plaintiff to unload said tank. Plaintiff had a son living at Laverne at that time, and when Mr. Freese disclosed to plaintiff that he was going to use the block and tackle to unload an oil tank at Laverne, plaintiff then informed Mr. Freese that he had a son living there, and plaintiff told Mr. Freese that, if he would take him up to Laverne and bring him back in his automobile, he would assist in unloading the oil tank. Mr. Freese agreed to this proposition. When Mr. Freese and Mr. Derby left Woodward for Laverne, they drove by and took plaintiff in their car to Laverne. On the morning of the 28th, Mr. Freese, Mr. Derby, and plaintiff were engaged in unloading the oil tank.

Curtis Bailey lived at Laverne, where he was engaged in the business of a drayman, and when Mr. Freese and Mr. Derby went to unload the oil tank, they secured the services of Mr. Bailey and his team to do such work as was necessary to be done with a team. It also appears that, in addition to doing a general dray business at Laverne. Mr. Bailey had been for some time a commission agent for defendant. On the morning plaintiff received the injuries, the oil tank had been partially unloaded, and was standing on what is termed the dome. It was necessary to tie a rope to the tank, and then to the wagon of Mr. Bailey. The wagon was located some 25 or 30 feet from the end of the tank. When this was done, plaintiff. Mr. Freese, and Mr. Derby went in between the oil tank and car for the purpose of putting in a beam, so that, when the oil tank dropped, it would not receive such a jar as would likely injure it. While plaintiff was thus located between the car and oil tank, Mr. Bailey started his team. Plaintiff was caught by the oil tank in such a manner as to inflict serious injuries on him.

After the cause had been called for trial, plaintiff requested and was granted permission to file an amended petition. That part of the amended petition which seeks to charge negligence on the part of defendant is as follows:

"And said oil tank, which had been lowered from said flat car and was resting upon the dome or top of said oil tank, and while * * * Freese was placing a beam, or heavy timber, under said tank, and while plaintiff in the discharge of his business and employment was directing the placing of said beam for said defendant, and while the said Bailey well knew that plaintiff was standing between said flat car and said tank, and without notice or warning to plaintiff, and without any fault on the part of plaintiff, and through the negligence and mismanagement of the defendant, in failing to furnish competent and skilled persons and coemployes to assist said plaintiff in performing said work, and through the negligence of defendant, and its agents, servants, and coemployes of said plaintiff. * * * Bailey carelessly, recklessly, wantonly, and negligently, and by reason of his incompetency and want of skill and ability in that particular, started said team, which was so attached to the north end of said oil tank, with great force, and by means thereof said plaintiff was caught and pinned and fastened between the south end of said tank and said flat car so located upon the side track of the Wichita Falls & Northwestern Railway Company, and that as a direct result and by reason of said team being so started by said defendant, its agents, servants, and employes and coemployes of this plaintiff, and by reason of the incompetency and want of skill of said employe Bailey, said plaintiff was greatly and permanently injured."

A demurrer was filed to the petition of plaintiff and overruled. After said demurrer was overruled, defendant filed an answer containing a general denial, and also that said injuries so received were the result of the acts of a fellow servant engaged with plaintiff in the same general undertaking. and employed by the same master, and to accomplish the same general purpose.

On the issue thus formed the cause was tried. and resulted in a verdict and judgment for plaintiff in the sum of $800. A motion for a new trial was filed and overruled.

From the action of the court in overruling said motion an appeal has been prosecuted to this court.

The only propositions presented by defendant that need consideration are as follows:

"(1) Neither the original petition nor the amended petition state facts sufficient to constitute a cause of action in favor of plaintiff and against defendant, and the demurrer to the amended petition should have been sustained, and the cause dismissed.

"(2) The evidence does not reasonably tend to support the verdict, and under the evidence this court should reverse the case and direct a verdict for plaintiff in error.

"(3) The trial court should have directed the jury to return a verdict in favor of plaintiff in error, defendant below."

In support of the first proposition it is urged by counsel that neither the original petition nor the amended petition states a cause of action. The particular defect pointed out in said petition is that it nowhere charged negligence upon the part of defendant in the employment of Bailey, or negligence in retaining him after his incompetency was discovered, or by the exercise of ordinary care might have been discovered. There seems to be considerable merit in the objection urged by counsel. This is an action by a servant against his master for negligence on the part of a fellow servant. Such are the express allegations of the petition; both were employed by the same master; both were engaged in a common undertaking and to accomplish a common purpose. Hence, if there is any negligence for which the master is liable, it is negligence resulting from the employment of a fellow servant, or negligence in retaining him after his want of skill had been discovered, or might have been discovered by the exercise of ordinary care; or in other words the negligence for which the master would be liable, under the allegations of the petition herein, would be the failure to exercise ordinary care in the selection of Bailey, a fellow servant of plaintiff.

The rule announced in 26 Cyc. 1393, on this proposition is as follows:

"In an action against a master for injuries caused by the negligence of a fellow servant, based on the theory of the negligence of the master in selecting and retaining in his service an incompetent servant, the declaration or complaint should allege that the servant was incompetent, that the master negligently employed or retained him with knowledge actual or constructive, of his incompetency, that the plaintiff was ignorant thereof, and the injury was caused by the negligence of such servant."

Judge Thompson, in his work on Negligence, (volume 4, § 4905), states the rule in reference to pleading in an action like the instant case, as follows:

"To justify a recovery or damages for any injury caused by the negligence of a fellow servant, it is necessary for the plaintiff to aver and prove that the fellow servant was incompetent or unfit, and that the master was negligent in employing him, or in retaining him in his service after discovering his incompetency or unfitness, and that the injury complained of was caused by such incompetency."

Labatt in his exhaustive work on Master and Servant (volume 2, par. 1080 [178]), states the rule as follows:

"A complaint which alleges that the master was negligent in selecting the fellow servant whose act caused the injury is not demurrable. On the other hand, a complaint is insufficient which on its face shows that the injury in suit was caused by the act of a fellow servant, unless it avers negligence in respect to the selection or retention of that servant."

See B. & W. R. Co. v. Dailey, 110 Ind. 75, 10 N. E. 631; Lawler v. Androscoggin, 62 Me. 463, 16 Am. Rep. 492; Collier v. Steinhart, 51 Cal. 119; Dow v. Kansas P. R. Co., 8 Kan. 642; Pilkinton v. Gulf, C. & S. F. R. Co., 70 Tex. 226, 7 S. W. 805; Kindel v. Hall, 8 Colo. App. 63, 44 Pac. 781; Southwest Virginia Improv. Co. v. Andrew, 86 Va. 270, 9 S. E. 1015; Kersey v. Kan. City, St. J. & C. B. R. Co., 79 Mo. 362.

There seems to be no exception to the doctrine announced in the cases above cited. That the requirement is fundamental will become apparent when it is remembered that the liability for which the master is answerable is not the specific act of negligence of a fellow servant, but negligence arising from the failure to exercise ordinary care in the selection of competent fellow servants. A servant enters upon the duties of his employment with an implied understanding and agreement that the master will exercise ordinary care in the selection of fellow servants, and when the master has discharged this duty there is no liability, arising in favor of a fellow servant, for injuries resulting from the negligence of a fellow servant, against the master, provided always that the master is liable or injuries resulting from the retention of an incompetent servant, after his incompetency has been discovered, or might have been discovered by the exercise of ordinary care.

The petition in the instant case was fatally defective, in that it failed to allege and

charge that defendant was negligent in the selection and employment of Bailey, or failed to exercise ordinary care in the discharge of said duty, or that defendant was negligent in retaining said Bailey in its service after his incompetency had been discovered, or might have been discovered by the exercise of ordinary care.

The second proposition urged by defendant is that the evidence does not reasonably tend to support the verdict. An examination discloses that there is no evidence offered upon the part of plaintiff that even tends to show that Bailey was not a competent man in the use and management of teams. The evidence upon the part of defendant shows that Bailey had been engaged in the transfer business for a number of years and had been actively in charge of teams, doing all kinds of work that is incident to such business; that this was the first accident that had ever happened in the prosecution of his work. Can it be said that the employment of this man constitutes actionable negligence, for which the defendant is liable? That, when there is a total absence of averment or proof of any act that constitutes negligence on the part of defendant, the defendant must respond in damages for injuries suffered by plaintiff?

"In actions for injuries sustained by reason of incompetent fellow servants, the presumption is that the fellow servant was not incompetent and that the master was not negligent in employing him. Therefore in such action the onus probandi is upon the plaintiff to negative these presumptions, in order to make a prima facie case. To establish negligence in cases of this kind the plaintiff must prove either that the master had undertaken personally to superintend and direct the works, or that the persons employed by him were not proper and competent persons, or that the material was inadequate, or the means and resources unsuitable to accomplish the work. The onus is upon him, and failing to do so he fails to establish negligence." Section 4906, vol. 4, Thomp. on Negligence.

In an attempt to prove that Bailey was an incompetent man for the management and control of a team, several witnesses were examined, and the only fact that they testified to was that Bailey was a man who seemed to work rapidly, and always seemed anxious to get a great deal of work done. We have never understood that this element constitutes any evidence of incompetency, or that it would constitute negligence per se to employ a servant whose conspicuous quality is that of industry.

The very foundation of plaintiff's right of recovery depended upon proof of the defendant's actual or constructive knowledge of Bailey's unfitness for the purpose for which he was employed; not that Bailey might have acted negligently, for this is not the gist of the action, but that the defendant did not exercise ordinary care in selecting a competent servant to do the work that Bailey was employed to do. This rule has been aptly stated in the case of Wabash R. Co. v. McDaniels, 107 U. S. 454, 2 Sup. Ct. 932, 27 L. Ed. 605, as follows:

"Although McHenry may have been and was guilty of negligence, and that negligence may have caused and did cause the collision which resulted in the injury to the plaintiff complained of, still plaintiff cannot recover in this action unless it appears from the evidence that the defendant was guilty of negligence either in the appointment of said McHenry or in retaining him in his position; and to establish such negligence on the part of the defendant, not only the incompetency of said McHenry must be shown, but it must be shown that defendant failed to exercise ordinary care or diligence to ascertain his qualifications and competency prior to his appointment, or failed to remove him after his incompetency had come to the notice of the defendant, or to some agent or officer of defendant having power to remove said McHenry."

In view of the law applicable to this case and the evidence adduced, should the court have directed a verdict in favor of the defendant? If there was any evidence to support the verdict, or if there was any conflict in the evidence, then the rule that obtains in this jurisdiction would require the verdict to stand; but, there being no evidence upon which negligence could be predicated for which the defendant is answerable, it was the duty of the court to have directed a verdict in favor of defendant.

It is a well-established rule in this court that, where there is any evidence that reasonably tends to support the verdict, it will not be disturbed on appeal; but, where there is an entire failure of any evidence to support the verdict, the judgment entered on said verdict will be set aside. C. D. Osborne & Co. v. White, 54 Okla. 733, 154 Pac. 653; Pahlka v. Chicago, R. I. & P. Ry. Co., 62 Okla. 223, 161 Pac. 544; Earley v. Johnson, 58 Okla. 466, 160 Pac. 482.

For the foregoing errors, we recommend that the judgment of the lower court be reversed, and the cause remanded to the district court of Woodward county, with direction to proceed in accordance with the views herein expressed.

By the Court: It is so ordered.